**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**MARTINSBURG**


**WILLIAM EUGENE WEBB,**

        Plaintiff,

v.

                                  **CIVIL ACTION NO. 3:07-CV-62**
                                  **(BAILEY)**

**JOE DRIVER, MR. MARTINEZ,**
**MR. ORSOLITS, MR. GREENWALL,**
**and DEBORAH BRADLEY,**

        Defendants.


### ORDER DECLINING TO ADOPT OPINION/REPORT AND RECOMMENDATION

I.    Introduction

      On this day, the above-styled matter came before this Court for consideration of the

Opinion/Report and Recommendation of United States Magistrate Judge John S. Kaull.

Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Kaull for

submission of a proposed report and a recommendation ("R & R").  Magistrate Judge Kaull

filed his R & R on November 20, 2009 [Doc. 58].   In that filing, the magistrate judge

recommended that this Court grant the defendants' Motions to Dismiss, or in the

Alternative, for Summary Judgment [Doc. 44] and dismiss the plaintiff's Complaint [Doc.

1].

      Pursuant to 28 U.S.C. § 636 (b) (1) (c), this Court is required to make a *de novo*

review of those portions of the magistrate judge's findings to which objection is made.

However, the Court is not required to review, under a *de novo* or any other standard, the

factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Kaull's R & R were due within ten (10) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b). By Order dated December 11, 2009 [Doc. 61], this Court extended the time by which to file objections until December 21, 2009. Plaintiff Webb filed his objections on December 23, 2009. Accordingly, this Court will review the portions of the report and recommendation to which Webb objected *de novo*. The remaining portions will be reviewed for clear error.

II.  Procedural History

On a previous date, this Court undertook a *de novo* review of the Complaint, and on March 14, 2008, adopted the Magistrate's R&R, which recommended dismissal. See Doc. 11. However, this case was later remanded by the Fourth Circuit (Case No. 08-6449) for further consideration of the plaintiff's claim, which alleged Eighth Amendment deliberate medical indifference regarding his hernia condition. See Doc. 20. In its order of remand, the Fourth Circuit specifically stated:

We find that the district court correctly dismissed the majority of [the plaintiff's] complaint; however, we hold that Webb's claim that prison officials were deliberately indifferent to his serious medical needs regarding his hernia states a claim. Thus, we vacate and remand in part and affirm in part . . .

2

***

> [W]e vacate the portion of the district court's order dismissing [the plaintiff's hernia claim] and remand for further proceedings. As to the remainder of Webb's claims, we find no reversible error in the district court's judgment. Accordingly, we affirm for the reasons stated by the district court.

*Id*. at 2, 4.

On remand, this case was re-referred to Magistrate Judge Kaull on February 2, 2009 [Doc. 25], and an Order to Answer was issued to the defendants on February 3, 2009 [Doc. 27]. Consistent with the mandate of the Fourth Circuit, the defendants were directed to answer the plaintiff's claim of deliberate indifference with respect to his hernia condition. Subsequently, Defendants filed a motion for summary judgment, and the magistrate judge issued the R&R presently before this Court, which recommends that this Court grant the motion.

III.    Factual Background

Plaintiff Webb is currently serving a 355-month prison sentence. Immediately following his sentence on May 10, 2001, the plaintiff became extremely ill and was hospitalized. He subsequently had surgery for a ventral hernia complication and for kidney failure. Following this surgery, the plaintiff was transferred to the Federal Medical Center in Springfield, Missouri (FMC-Springfield). While there, several medical practitioners determined that he would require further surgery for his medical conditions; however, the plaintiff was unable to complete his treatments because of a transfer to the Federal Correctional Institution in Estill, South Carolina (FCI-Estill).

Immediately upon his arrival at FCI-Estill, the plaintiff sought treatment for his medical conditions. The plaintiff asserts that he failed to receive proper treatment while at FCI-Estill, which prompted him to file a similar civil action in the United States District Court for the District of South Carolina. *See **Webb v. Hamidullah***, 281 Fed.Appx. 159, 2008 WL 2337608 (D. S.C. June 6, 2008).

Plaintiff was subjected to yet another transfer. Upon his arrival at USP-Hazelton on May 31, 2006, the plaintiff apprised medical staff of his hernia condition. Defs.' Ex. 1 (Declaration of Harold Boyles); see also Defs.' Ex. E (Plaintiff's medical records). At that time, his abdominal hernia was evaluated and found to be minimally symptomatic. Defs.' Ex. 1 ¶11. On June 14, 2006, the plaintiff instituted a grievance regarding surgery for his ventral hernia. Id. at ¶ 8. An investigation into the plaintiff's complaint ensued. Id. at ¶ 9. During the investigation, it was discovered that the plaintiff had been approved for hernia repair surgery on two prior occasions: once while incarcerated at FMC-Springfield and once at FCI-Estill. Id. at ¶ 10. The plaintiff's medical records also showed that he had refused surgery both times. Id.

Additionally, upon arrival at Hazelton, the medical staff was aware of FCI-Estill Dr. Vendel's April 2006, recommendation that the surgery be performed "electively" within six months. Further, because he was only minimally symptomatic upon his arrival, and a chronic care plan was in place, the plaintiff's grievances were denied. Id; see also Complaint at Ex. A (plaintiff's administrative remedies). At that time, it was the opinion of the Hazelton medical staff that the plaintiff's hernia condition could be controlled without surgery. Id.

4

The medical records indicate, however, that as of May 15, 2007, Dr. Richard Ramirez recommended surgery for Mr. Webb's hernia. At this time, the recommendation was no longer labeled as "elective," which the Fourth Circuit clearly notes is distinguishable from the facts of **_Webb v. Hamidullah_**, in which the Court denied relief. Indeed, the Utilization Review Action Request form dated May 15, 2007, specifically approved Webb's hernia surgery and listed it as a "Level 2" "medically necessary" procedure "that cannot be reasonably delayed without the risk of further complication, serious complication, significant pain or discomfort . . .." See Pl.'s Ex. (B)(41). Additionally, this medical review designated the surgery as a "Priority 2," which provides for a time frame of no more than thirty (30) days. Id. The urgent nature of the surgery is further evidenced by the medical reports in the months leading up to this determination, which document several visits to the medical staff for complaints of "a lot of pain," "pain level 7" (as documented by the prison's own medical staff; see Pl.'s Ex. (B)(32)), "chronic pain," see Pl.'s Ex. (B)(40).

Subsequent to the above-mentioned course of treatment, however, surgery was not scheduled until approximately nine (9) months later. Instead, several months after the thirty (30) day period in which surgery was to be performed, the Utilization Review Committee simply reviewed Webb's "condition" again, and decided to place it "under continued review." See Pl.'s Ex. (B)(44). Then, in October of 2007, Webb was examined by another physician, who also recommended an "incisional hernia repair." Again, months later, on January 31, 2008, Webb was approved for yet another surgery by the Utilization Review Committee. For whatever reason, this recommendation was downgraded from "medically necessary" to "medically acceptable." In addition, the priority level was downgraded to a level 3, to be

performed within 60 days, but subject to an extension to up to 120 days. Finally, the surgery was performed nearly one year later on March 12, 2008. Since the filing of this case, the plaintiff was again transferred in May of 2008, and has been incarcerated at the Gilmer Federal Correctional Institution in Glenville, West Virginia ("FCI-Gilmer").

## IV. Summary Judgment Standard

Rule 56(e) of the Federal Rules of Civil Procedure provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Rule 56 further provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[1] A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[2] Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

---

[1] FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).

[2] **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986).

party."[3]

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."[4]  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.[5]  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[6]

## V.    Contentions of the Parties

The defendants assert that the Complaint should be dismissed, or judgment granted in their favor, for the following reasons:

(1) the named defendants lacked personal involvement in the treatment of the plaintiff's hernia condition;

(2) the plaintiff fails to state a claim for which relief may be granted; and

(3) the defendants are entitled to qualified immunity.

In his response, the plaintiff asserts that the defendants were personally involved in the treatment of his hernia condition.  The plaintiff asserts that he spoke directly with

---

[3] *Anderson*, 477 U.S. at 250.

[4] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

[5] Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248.

[6] *Anderson*, 477 U.S. at 249 (citations omitted).

Defendants Driver, Martinez and Orsolits about his condition and sought their intervention. The plaintiff contends these defendants informed him that they did not have the authority to make medical decisions. In addition, the plaintiff asserts that these defendants were a part of USP-Hazelton's Utilization Review Committee, which makes decisions as to which inmates receive recommended procedures such as hernia surgery. The plaintiff asserts that these defendants are liable because they failed to intervene on his behalf.

In addition, the plaintiff asserts that he has clearly stated a claim of deliberate indifference to his serious medical needs. The plaintiff asserts that his claim cannot fail for two reasons:

(1) his medical records show an objectively reasonable medical need, and non-treatment of that need for at least two years; and

(2) as shown in his certified complaint and declaration, these officials acted subjectively with a sufficiently culpable state of mind.

Plaintiff contends that despite his continual pain, he was not afforded corrective surgery. Further, although he sought the assistance of those staff members with considerable authority with respect to medical decisions, he was continually denied treatment. Attached to his objections are several of the plaintiff's medical records which tend to support these allegations.

With regard to his hernia condition, the plaintiff asserts that the defendants were deliberately indifferent because they "willfully and deliberately ignore[d] the expressed and documented orders of many licensed medical specialist[s], who explicitly and unequivocally prescribed/recommended surgeries for [his] abdominal hernia . . . These defendants have

bureaucratically denied [him] prompt and proper medical treatment, over documented evidence that the conditions are unstable, deteriorating, and constently (sic) causes (sic) [him] considerable, and increasing pain daily."

Moreover, the plaintiff asserts that even if observing and monitoring his medical condition could be considered treatment, it was not adequate medical treatment given the circumstances. The plaintiff asserts that none of the physicians or other medical staff that observed and monitored his condition were specialists and that he waited 22 months for surgery on his hernia, even though his medical records contained recommendations that the surgery be performed. The plaintiff further asserts that the defendants were completely aware of his medical condition and the risks to his health if reasonable measures were not taken to correct it. The plaintiff asserts that the defendants' reckless disregard for his health rises above the level of negligence, even if it was not done specifically to cause harm.

Finally, the plaintiff asserts that the defendants are not entitled to qualified immunity. First, the plaintiff asserts that he has established a violation of his constitutional rights. In addition, the plaintiff argues that this right was clearly established at the time.

VI.    Analysis

    **A.    Motion for Permissive Joinder and for Voluntary Dismissal of Greenwald and Bradley**

I.    Motion for Permissive Joinder

In this motion, the plaintiff seeks to add Harold Boyles ("Boyles"), Dr. Jorges S. Vazquez ("Dr. Vazquez"), Dr. Herman E. Branson ("Dr. Branson") and Dr. Richard R. Ramirez ("Dr. Ramirez") as defendants in this action.  In support of his motion, the plaintiff asserts that each of these individuals was employed by the Bureau of Prisons at the time of the alleged acts and was involved in the alleged violation of the plaintiff's rights. Moreover, the plaintiff asserts that he did not receive documented evidence of their involvement regarding his claims until after this case was initiated.

The plaintiff specifically asserts that Boyles, as the Assistant Health Services Administrator, prevented him from receiving soft soled shoes from outside the prison when the plaintiff could not afford to purchase Dr. Scholl's soft soled shoes from the Commissary. In addition, when informed of the plaintiff's inability to afford soft soled shoes from the Commissary, Boyles allegedly failed to provide the plaintiff with insoles.  Because  the plaintiff's stated claims against Boyles go to the soft soled shoe claim, which has already been dismissed, the plaintiff's motion to join Defendant Boyles as a party to this case is **DENIED**.

Regarding the other persons he seeks to join, the plaintiff merely asserts that they were somehow involved with the alleged failure to provide his hernia surgery; however, the plaintiff fails to make any specific allegations against them.  Instead, he states that Vazquez, Branson and the other "named" defendants were each personally advised of his serious medical conditions and the need of imminent treatment.  He also asserts that each was a member of the Utilization Review Committee, who jointly denied his request for

hernia surgery.

The permissive joinder of parties is governed by Rule 20 of the Federal Rules of Civil Procedure. Rule 20 states in pertinent part:

> All persons . . . may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

In addition, a court considering a motion for permissive joinder should do so in light of the rule's purpose, "which is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." *Saval v. BL Ltd.*, 710 F.2d 1027, 1031 (4th Cir. 1983) (citing *Mosley v. General Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)).

In this case, it is clear that permitting the plaintiff to join Vazquez, Branson and Ramirez to the instant action would "promote trial convenience and expedite the final determination of disputes." All of the plaintiff's claims arise out of the same series of transactions or occurrences, and the question of law is common to all defendants. Thus, the plaintiff's motion to join Dr. Vazquez, Dr. Branson and Dr. Ramirez in this suit should be, and the same hereby is, **GRANTED**.

II. Motion for Voluntary Dismissal of Defendants Greenwald and Bradley

Also in this motion, the plaintiff seeks to voluntarily dismiss Defendants Greenwall and Debra Bradley. See Doc. 57 at 14. Pursuant to Rule 41(a), once an adverse party has filed an answer to a complaint or a motion for summary judgment, the plaintiff may only voluntarily dismiss claims by order of the Court.

A review of the file shows that the plaintiff's claims against Defendants Greenwald and Bradley went solely to his claims regarding a nutritionally balanced diet and request for more law library hours. Those claims were dismissed on preliminary review, and that decision was affirmed on appeal. The plaintiff alleges no claims against either of these defendants as to the remaining claim of deliberate indifference as to his hernia condition. Accordingly, the plaintiff's request to voluntarily dismiss should be, and is, **GRANTED**. Accordingly, Defendants Greenwald and Bradley are hereby **DISMISSED** from this case.

### B. Plaintiff's Deliberate Indifference Claim

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208

(1st Cir.), *cert. denied*, 500 U.S. 956 (1991).  A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.  **Monmouth County Corr. Inst. Inmates v. Lanzaro**, 834 F.2d 326, 347 (3d Cir.), *cert. denied*, 486 U.S. 1006 (1988).

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference.  **Wilson**, 501 U.S. at 303.  A finding of deliberate indifference requires more than a showing of negligence.  **Farmer v. Brennan**, 511 U.S. 825, 835 (1994).  A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  **Farmer**, 511 U.S. at 837.

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent."  *Id*. at 844.  "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness."  **Miltier v. Beorn**, 896 F.2d 848, 851 (4th Cir. 1990).  Additionally, mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist.  **Wright v. Collins**, 766 F.2d 841, 849 (4th Cir. 1985).  A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to

13

good health." *See* **Morales Feliciano v. Calderon Serra**, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing **Brock v. Wright**, 315 F.3d 158, 162 (2d Cir. 2003)).

For the following reasons, this Court finds that the plaintiff has made a sufficient showing from which a jury could conclude the defendants were personally involved in a violation of his constitutional rights, or that the defendants were deliberately indifferent to his serious medical needs.

### C.     Defendants Driver, Martinez and Orsolits

With respect to the plaintiff's claims against Defendants Driver, Martinez and Orsolits, the plaintiff asserts that these defendants are personally responsible for the alleged violation of his rights.  To support this claim, the plaintiff asserts that he approached these defendants about his medical issues because of their "considerable authority" in their capacities as members of the Utilization Review Committee.  Additionally, because of their positions, they were keenly aware of the plaintiff's medical complaints.   Accordingly, Defendants Driver, Martinez and Orsolits were involved in the alleged violation of the plaintiff's rights in their supervisory or official capacities.

In **Miltier v. Beorn**, 896 F.2d 848, 854 (4th Cir. 1990), the Fourth Circuit recognized, however, that supervisory defendants may be liable in a **Bivens** action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations."  In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is

14

based, not upon notions of respondeat superior, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." *Id*. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. *Id*. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. *Id*. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. *Id*.

Typically, a suit against Government agents acting in their official capacities is considered a suit against the United States itself. *See* ***Kentucky v. Graham***, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Remedy under ***Bivens***, however, is against federal officials in their individual capacities, not the federal Government.

"Official capacity suits generally represent an action against an entity of which an officer is an agent . . ." ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 690 n. 55 (1978). Moreover, the Eleventh Amendment bars suits against the State unless the State has waived its immunity. ***Will v. Michigan Dept. Of State Police***, 491 U.S. 58, 66 (1989). In this case, claims against the defendants in their official capacities would be claims against the state and thus barred by the Eleventh Amendment immunity.

As for the defendants' defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  **Harlow v. Fitzgerald**, 457 U.S. 800, 818 (1982).  The two-part test for qualified immunity is whether (1) the facts alleged "show [that] the . . . conduct violated a constitutional right" and (2) the constitutional right in question was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  **Saucier v. Katz**, 533 U.S. 194, 201-202 (2001).

This Court finds that the plaintiff has provided evidence upon which, if proved, a reasonable jury could find that these defendants tacitly authorized or were indifferent to an alleged violation of Webb's constitutional rights.  It is clear that the advice of medical staff was provided to them in their official capacities as a part of the Utilization Review Committee.  Because they are not medical personnel, such reliance was completely reasonable and appropriate. See **Miltier v. Beorn**, 896 F.2d at 854.  The physician's found that the plaintiff's hernia surgery was "medically necessary" however, the defendants failed to schedule the surgery within the recommended thirty-day period as indicated by the "Level 2" priority designation.  See Pl.'s Ex. (B)(41).  Moreover, there are material issues of fact which remain unresolved, prohibiting a grant of qualified immunity at this stage.

The Fourth Circuit's Opinion reversing on the issue of medical indifference regarding Webb's hernia is quite telling.  The Court, in distinguishing this case from Webb's previous action against officials at FCI-Estill, states two material differences which require a different result.  In **Webb v. Hamidullah**, No. 06-7381 (4th Cir. June 6, 2008), the Fourth Circuit affirmed the district court's grant of summary judgment to defendants on Webb's claim

against officials at FCI-Estill. The Court opined in that case "that Webb failed to support his claim of surgical delay with evidence of resultant harm or a worsened condition." *Id*. In the present case, however, the Fourth Circuit found that "Webb has alleged that his pain is severe and that his hernia has grown larger due to the delay in surgery." *Id*. Second, the Court in **Hamidullah** found that after seeking and obtaining medical opinions, the physician at FCI-Estill determined that a hernia operation was to be performed on an "elective" basis – "a decision [the Court] found did not implicate Webb's Eighth Amendment rights." *Id*. In this case, Webb alleges, and the record supports, that while he was housed in Hazelton, his hernia surgery was deemed "medically necessary." *Id*.

As a final note, this Court feels compelled to recite Justice Gregory's dissenting opinion in **Hamidullah**, in which the recommendation for surgery at that time was only to be performed on an "<u>elective</u>" basis:

"Webb has waited over four years to have an "extremely enlarged incisional ventral hernia" removed-a surgery prison medical staff determined could "electively" be done within six months. It is undisputed that the surgery is necessary, and the only accepted medical procedure for remedying Webb's serious condition. However, as Webb lingers, the majority, without pause or hesitation, holds that, as a matter of law, the prison medical staff has not been "deliberately indifferent" to his serious medical need to have surgery "absent some resultant harm or a worsened condition." (Maj. Op. at 167.) The Eighth Amendment does not require a prisoner to be on the precipice of death to receive the necessary treatments that the prison

17

medical staff itself prescribed.

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. . . . "[D]eliberate indifference entails something more than mere negligence," **Farmer v. Brennan**, 511 U.S. 825, 835, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), but indifference can be manifested by prison doctors intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Estelle*, 429 U.S. at 104-05, 97 S.Ct. 285.

It is undisputed that Webb's hernia condition is a serious medical need. *See **Martin v. Bowman,*** 48 F.3d 1216 (4th Cir. 1995) ("A medical need is serious if it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention.") The majority's "deliberate indifference" analysis of Webb's Eighth Amendment claim is simple: rather than arguing that he received no medical treatment, Webb only alleges that Defendants conservative course of treatment violates his Eighth Amendment rights and since he was seen numerous times by prison medical staff and outside medical specialists, defendants were not deliberately indifferent. Simplicity notwithstanding, the majority errs.

In September, 2003, a consulting general surgeon recommended that Webb receive "laparoscopic ventral hernia surgery." (J.A. 356.) Based on the alleged reducible nature of the hernia, Dr. Vendel deemed Webb's

surgery "elective;" that is, "not urgent" and he posited that surgery could be performed within six months of September 24, 2004. However, only five days after Dr. Vendel's determination that the surgery was "elective," Webb was examined by a consulting physician, who observed "a new bulge on [Webb's] abdomen," that had increased in size, and recommended laparascopic repair. (J.A. 358.) As the majority correctly notes, Webb complained thirteen times of chronic abdominal pain, and two different specialists recommended surgery during the course of two years after the initial recommendation. Yet, surgery was still delayed and another six months passed without any discussion of scheduling Webb for surgery. While the majority makes much of Webb receiving treatment throughout this time and Dr. Vendel determining that the surgery was "elective," it is clear that Webb did not receive the treatment that was prescribed year after year by several surgeons despite his chronic pain and medical infirmities.

For instance, there is no evidence that Dr. Vendel, after the first six-months passed, determined that Webb could wait another six-months for surgery. In fact, the record suggests otherwise. On August 3, 2005, Dr. Vendel referred Webb, after complaints of extreme pain, to an orthopedic surgeon for a second opinion. It was not until April 27, 2006, nearly three years after surgery was first recommended and five months after Webb filed suit, that Dr. Vendel recommended surgery be scheduled. On March 10, 2006, another orthopedic surgeon confirmed that Webb's hernia had

increased and surgery was needed. (J.A. 585.) To be sure, even if a procedure is "elective"-the term certainly should not mean that Webb must wait almost four years for a surgery that Dr. Vendel stated could be scheduled at the very least within six months.

We have held, albeit in an unpublished opinion, that where prison officials are aware of a serious medical need and delay treatment, the plaintiffs' allegations are sufficient enough to satisfy the objective component of a deliberate indifference suit. *See **Clinkscales v. Pamlico Corr. Facility***, 238 F.3d 411 (4th Cir. 2000) (inmate sufficiently alleged deliberate indifference as a result of defendant's nine-month delay in providing a necessary surgery) (citing ***Monmouth County Corr. Inst. Inmates v. Lanzaro***, 834 F.2d 326, 346-47 (3d Cir. 1987) (prison officials may not interminably delay medical treatment or deny treatment based on arbitrary and burdensome procedures.)) Here, Webb presented evidence, when viewed in a light most favorable to him-as we must, sufficient to create a triable issue of material fact as to whether the delay constitutes deliberate indifference.

The majority's rationale to the contrary rings hollow in the face of the probability that further delay of Webb's hernia surgery could result in the worsening or strangulation of his hernia, bowel obstruction, or even Webb's death. (J.A. 311.) Deliberate indifference should not turn on whether Webb's condition worsened during the delay and nor should Dr. Vendel's decision to

take an easier but less efficacious course negate deliberate indifference. It is the delay, itself, that is deliberately indifferent. As the Supreme Court stated in *Estelle*, an unreasonable delay or withholding of treatment can constitute deliberate indifference and, therefore, offend the Eighth Amendment. *Estelle*, 429 U.S. at 104-05, 97 S.Ct. 285.

It is uncontroverted that Webb suffers from a serious medical condition that requires surgery. Merely providing a prisoner with some treatment is not the Constitutional mandate of the Eighth Amendment. Rather, it is providing a prisoner with the care he or she needs. Prisoners are deprived of freedom and stripped of most rights but the Eighth Amendment guarantees that they not be treated less than human. So I ask, is it humane for a prisoner, who has suffered for four years with a serious medical condition, to be waiting for a surgery that everyone agrees is necessary? Based upon the majority's reasoning, it is uncertain how long Webb must wait for medical treatment before he can make out an Eighth Amendment claim that would at least survive summary judgment."

This Court is of the opinion that the day of which Justice Gregory speaks is today. Accordingly, because the above may implicate Webb's Eighth Amendment rights, the defendants' motion for summary judgment must be **DENIED**.

VII. Conclusion

Upon careful review of the above, this Court **DECLINES TO ADOPT** the magistrate judge's **Opinion/Report and Recommendation [Doc. 58]**.   Further, the plaintiff's Objections **[Doc. 64]** are hereby **SUSTAINED in part** to the extent that they are consistent with this Opinion.  Accordingly, the Court is of the opinion that the Motion to Dismiss, or in the Alternative, for Summary Judgment **[Doc. 44]** should be, and the same hereby is, **DENIED**.  Further, the plaintiff's motion for permissive joinder **[Doc. 57]** is **GRANTED**.

As a result of the foregoing, this Court **ORDERS** that attorney **Robert McCoid** be **APPOINTED** to represent the plaintiff in all further proceedings related to this matter.  As a final matter, a **TELEPHONIC Scheduling Conference** is hereby set for <u>**March 15, 2010, at 5:00 p.m.**</u> to establish all necessary deadlines including discovery and trial dates.  **The Court will initiate the phone conference using the telephone numbers provided in CM/ECF.  The parties are directed to contact the Court no later than March 11, 2010, if a <u>different</u> number is to be utilized for this call**.  The Court will review dates for the thirteen (13) items listed on the Scheduling Conference Checklist enclosed herewith. Pursuant to LR Civ P 16.01(e), a scheduling order will be entered thereafter.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record; mail a copy to Attorney Robert McCoid at McCamic, Sacco, Pizzuti & McCoid, PLLC; 56-58 14th Street; Wheeling, WV 26003; and to mail a copy to the plaintiff.

**DATED:** February 4, 2010.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

_____

Plaintiff(s),


v.

Civil Action No. _____


_____

Defendant(s).


SCHEDULING ORDER CHECKLIST

ATTORNEYS


1. INTERMEDIATE PRETRIAL CONFERENCE - Upon Request


_____


2. MEDIATION          Before -


3. JOINDER AND AMENDMENTS

_____


4. EXPERT DISCLOSURE

      a. With Burden         _____

      b. Without Burden     _____


## 5. EXAMINATION/INSPECTIONS

                _____


## 6. DISCOVERY COMPLETION

                _____


## 7. DISPOSITIVE MOTIONS   _____

                _____

                _____


## 8. PRETRIAL DISCLOSURES, FED R. CIV PRO 26(a) 3

                _____

      a. Objections     _____


## 9. JURY INSTRUCTIONS, VOIR DIRE and VERDICT FORMS

_____

        a. Objections              _____

## 10. MOTIONS IN LIMINE

                                  _____

        a. Objections              _____

## 11. JOINT FINAL PRETRIAL CONFERENCE ORDER

                              _____

## 12. FINAL PRETRIAL CONFERENCE

                             _____

## 13. Trial                         _____

       (If non-jury trial, Proposed Findings of Fact

       and Conclusions of Law are to be filed with Court

       and opposing counsel _____)