**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**WILLIAM EUGENE WEBB,**

        Plaintiff,

v.

                              **CIVIL ACTION NO. 3:07-CV-62
                              (BAILEY)**

**JOE DRIVER, MR. MARTINEZ,
MR. ORSOLITS, DR. JORGES VAZQUEZ,
DR. HERMAN BRANSON, DR. RAMIREZ,
and THE UNITED STATES OF AMERICA,**

        Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO
DISMISS AND MOTION FOR SUMMARY JUDGMENT**

I.     Introduction

       On this day, the above-styled matter came before this Court for consideration of the

defendants' Motion to Dismiss and Motion for Summary Judgment [Doc. 115], filed May 25,

2011.  Plaintiff filed his Response [Doc. 122] on June 15, 2011.  Defendants filed their

Reply brief [Doc. 124] on June 20, 2011.  This Motion having been fully briefed is now ripe

for disposition.  For the reasons that follow, the Motion to Dismiss and Motion for Summary

Judgment [Doc. 115] is hereby **GRANTED IN PART** and **DENIED IN PART**.

II.    Procedural History

       On a previous date, this Court undertook a *de novo* review of the *pro se* plaintiff's

original Complaint [Doc. 1], and on March 14, 2008, adopted Magistrate Judge John S.

Kaull's Report and Recommendation ("R&R") [Doc. 7], which recommended dismissal.

However, this case was later remanded by the Fourth Circuit Court of Appeals by Order dated November 24, 2008 [Doc. 20] (Case No. 08-6449) for further consideration of the plaintiff's claim, which alleged Eighth Amendment deliberate medical indifference regarding his hernia condition. In its order of remand, the Fourth Circuit specifically stated:

> We find that the district court correctly dismissed the majority of [the plaintiff's] complaint; however, we hold that Webb's claim that prison officials were deliberately indifferent to his serious medical needs regarding his hernia states a claim. Thus, we vacate and remand in part and affirm in part . . .

***

> [W]e vacate the portion of the district court's order dismissing [the plaintiff's hernia claim] and remand for further proceedings. As to the remainder of Webb's claims, we find no reversible error in the district court's judgment. Accordingly, we affirm for the reasons stated by the district court.[1]

*Id.* at 2, 4.

On remand, this case was re-referred to Magistrate Judge Kaull on February 2, 2009 [Doc. 25], and an Order to Answer was issued to the defendants on February 3, 2009 [Doc. 27]. Consistent with the mandate of the Fourth Circuit, the defendants were directed to answer the plaintiff's claim of deliberate indifference with respect to his hernia condition. Subsequently, defendants filed a Motion for Summary Judgment [Doc. 44], and the magistrate judge issued a subsequent R&R [Doc. 58], which recommended that this Court

---

[1] This Court finds the Fourth Circuit has made clear that the only issue on remand pertains to those claims directly related to Mr. Webb's hernia. Accordingly, claims regarding plaintiff's gastroesophageal reflux disease ("GERD") must be **DISMISSED**.

grant the motion. By Order dated February 4, 2010 [Doc. 65], this Court declined to adopt the R&R, thereby denying the defendants' Motion for Summary Judgment, and setting this matter for a scheduling conference to establish all necessary filing deadlines including discovery and trial dates.

Additionally, the plaintiff sought to join certain defendants to this action: Harold Boyles ("Boyles"), Dr. Jorges S. Vazquez ("Dr. Vazquez"), Dr. Herman E. Branson ("Dr. Branson") and Dr. Richard R. Ramirez ("Dr. Ramirez"). In support of his motion, the plaintiff asserted that each of these individuals was employed by the Bureau of Prisons at the time of the alleged acts – or inaction – and was involved in the alleged violation of the plaintiff's Constitutional rights. The plaintiff asserted that he did not receive documented evidence of their involvement regarding his claims until after this case was initiated.

Regarding the other persons he sought to join, the plaintiff merely asserted that they were somehow involved with the alleged failure to provide his hernia surgery; however, the plaintiff failed to assert any specific allegations against them. Instead, he states that Vazquez, Branson, and the other "named" defendants were each personally advised of his serious medical conditions and the need of imminent treatment. He also asserted that each was a member of the Utilization Review Committee, who jointly denied his request for hernia surgery in complete conflict with Dr. Ramirez' recommendation.

This Court found it clear that permitting the plaintiff to join Drs. Vazquez, Branson and Ramirez to the instant action would "promote trial convenience and expedite the final determination of disputes." All of the plaintiff's claims arise out of the same series of transactions or occurrences, and the question of law is common to all defendants. Thus, the plaintiff's motion to join Drs. Vazquez, Branson and Ramirez was granted except as to

Harold Boyles.

Additionally, this Court appointed counsel, Robert McCoid, to represent the plaintiff in all future proceedings related to this matter. By Order dated January 4, 2011, this Court entered its Second Amended Scheduling Order [Doc. 100], which established a trial date of August 1, 2011. On May 19, 2011, the plaintiff, upon learning he would be transferred to a different facility, filed a *pro se* Motion to Stop Transfer [Doc. 112]. That same day, the plaintiff filed another *pro se* Motion to Dismiss Tort Claim [Doc. 111]. In the interim, this Court has learned the plaintiff has since been transferred to USP Coleman in Coleman, Florida. Additionally, as noted above, the FTCA claim has been voluntarily dismissed. As such, the plaintiff's two *pro se* motions **[Docs. 111 & 112]** are now **MOOT**.

III.    Factual Background

Plaintiff Webb is currently serving a 355-month prison sentence. Immediately following his sentence on May 10, 2001, the plaintiff became extremely ill and was hospitalized. He subsequently had surgery for a ventral hernia complication and for kidney failure. Following this surgery, the plaintiff was transferred to the Federal Medical Center in Springfield, Missouri (FMC-Springfield). While there, several medical practitioners determined that he would require further surgery for his medical conditions; however, the plaintiff was unable to complete his treatments because of a transfer to the Federal Correctional Institution in Estill, South Carolina (FCI-Estill).

Immediately upon his arrival at FCI-Estill, the plaintiff sought treatment for his medical conditions. The plaintiff asserts that he failed to receive proper treatment while at FCI-Estill, which prompted him to file a similar civil action in the United States District Court for the District of South Carolina. *See **Webb v. Hamidullah**, 281 Fed.Appx. 159, 2008 WL

4

2337608 (D. S.C. June 6, 2008).

Plaintiff was subjected to yet another transfer. Upon his arrival at USP-Hazelton on May 31, 2006, the plaintiff apprised medical staff of his hernia condition. Defs.' Ex. 1 (Declaration of Harold Boyles); see also Defs.' Ex. E (Plaintiff's medical records). At that time, his abdominal hernia was evaluated and found to be minimally symptomatic. Defs.' Ex. 1 at ¶ 11. On June 14, 2006, the plaintiff instituted a grievance regarding surgery for his ventral hernia. Id. at ¶ 8. An investigation into the plaintiff's complaint ensued. Id. at ¶ 9. During the investigation, it was discovered that the plaintiff had been approved for hernia repair surgery on two prior occasions: once while incarcerated at FMC-Springfield and once at FCI-Estill. Id. at ¶ 10. The plaintiff's medical records also showed that he had refused surgery both times. Id.

Additionally, upon arrival at Hazelton, the medical staff was aware of FCI-Estill Dr. Vendel's April 2006, recommendation that the surgery be performed "electively" within six months. Further, because he was only minimally symptomatic upon his arrival, and a chronic care plan was in place, the plaintiff's grievances were denied. Id.; see also Complaint at Ex. A (plaintiff's administrative remedies). At that time, it was the opinion of the Hazelton medical staff that the plaintiff's hernia condition could be controlled without surgery. Id.

The medical records indicate, however, that approximately one year later, on May 15, 2007, Dr. Richard Ramirez recommended surgery for Mr. Webb's hernia. At this time, the recommendation was no longer labeled as "elective," which the Fourth Circuit clearly notes is distinguishable from the facts of *Webb v. Hamidullah*, in which the Court ultimately denied relief. Indeed, at Hazelton, the Utilization Review Action Request form

5

dated May 15, 2007, specifically approved Webb's hernia surgery and listed it as a "Level 2;" that is, a "medically necessary" procedure "that cannot be reasonably delayed without the risk of further complication, serious complication, significant pain or discomfort . . .." See Pl.'s Ex. (B)(41). Additionally, this medical review designated the surgery as a "Priority 2," which provides for a time frame of no more than thirty (30) days. Id. The urgent nature of the surgery is further evidenced by the medical reports in the months leading up to this determination, which document several visits to the medical staff for complaints of "a lot of pain," "pain level 7" (as documented by the prison's own medical staff; see Pl.'s Ex. (B)(32)), "chronic pain," see Pl.'s Ex. (B)(40).

Subsequent to the above-mentioned course of treatment, however, surgery was not scheduled until approximately nine (9) months later. Instead, several months after the thirty (30) day period in which surgery was to be scheduled, on September 19, 2007, the Utilization Review Committee simply reviewed Webb's "condition" again, and decided to place it "under continued review." See Pl.'s Ex. (B)(44). Then, in October of 2007, Webb was examined by another physician, who also recommended an "incisional hernia repair." Again, months later, on January 31, 2008, Webb was approved for yet another surgery by the Utilization Review Committee. For whatever reason, this recommendation was downgraded from "medically necessary" to "medically acceptable." In addition, the priority level was downgraded to a "Level 3," to be performed within 60 days, but subject to an extension to up to 120 days. Finally, the surgery was performed nearly one year later on March 12, 2008. This Court notes that since the filing of this case, the plaintiff has twice been transferred: first, in May of 2008, to Gilmer Federal Correctional Institution in Glenville, West Virginia ("FCI-Gilmer"), and again to USP Coleman in Coleman, Florida

6

sometime between May and June.

IV.    Summary Judgment Standard

Rule 56(e) of the Federal Rules of Civil Procedure provides that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must– by affidavits or as otherwise provided in this rule– set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

Rule 56 further provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see* **Celotex Corp. v. Catrett**, 477 U.S. 317, 322 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 250 (1986).  Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  **Anderson**, 477 U.S. at 250.

Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  **Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.**, 475 U.S. 574, 586 (1986).  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a

7

genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323-25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."  *Id*. at 249 (citations omitted).

V.    Contentions of the Parties

The defendants assert that the Amended Complaint [Doc. 92] should be dismissed, or judgment granted in their favor, for the following reasons:

(1) the named defendants lacked personal involvement in the treatment of the plaintiff's hernia condition;

(2) the plaintiff fails to state a claim for which relief may be granted; and

(3) the defendants are entitled to qualified immunity.

In his response, the plaintiff asserts that the defendants were personally involved in the treatment of his hernia condition.  The plaintiff asserts that he spoke directly with Defendants Driver, Martinez and Orsolits about his condition and sought their intervention to no avail.  The plaintiff contends these defendants informed him that they did not have the authority to make medical decisions.  In addition, the plaintiff asserts that these defendants were a part of USP-Hazelton's Utilization Review Committee ("URC"), which makes decisions as to which inmates receive recommended procedures such as hernia surgery.  Through the course of discovery, however, it appears that only Mr. Orsolits and Dr. Ramirez were on the URC.  The plaintiff asserts that these defendants were aware of Dr. Ramirez' diagnosis, yet failed to intervene on his behalf.

In addition, the plaintiff asserts that he has clearly stated a claim of deliberate indifference to his serious medical needs.  The plaintiff asserts that his claim cannot fail for two reasons:

(1) his medical records show an objectively reasonable medical need, and non-treatment of that need for nearly two years; and

(2) the named officials acted subjectively indifferent to his medically necessary needs with a sufficiently culpable state of mind.

Plaintiff contends that despite his continual pain, he was not afforded this "medically necessary" surgery until approximately 22 months after this suit was filed. Further, although he sought the assistance of those staff members with considerable authority with respect to medical decisions, he was continually denied treatment.

With regard to his hernia condition, the plaintiff asserts that the defendants were deliberately indifferent because they "willfully and deliberately ignore[d] the expressed and documented orders of many licensed medical specialist[s], who explicitly and unequivocally prescribed/recommended and/or deemed the surgery for his abdominal hernia as "medically necessary."

Moreover, the plaintiff asserts that even if observing and monitoring his medical condition could be considered treatment, it was not adequate medical treatment given the doctor's own diagnosis. The plaintiff asserts that none of the physicians or other medical staff that observed and monitored his condition were specialists and that he waited 22 months for surgery on his hernia, even though his medical records contained recommendations that the surgery be performed within 30 days. The plaintiff further asserts that the defendants were completely aware of his medical condition and the risks to his health if reasonable measures were not taken to correct it. The plaintiff asserts that the defendants' disregard for his health rises to a level of deliberate indifference to his serious medical needs as diagnosed by the defendant doctors.

Finally, the plaintiff asserts that the defendants are not entitled to qualified immunity. First, the plaintiff asserts that he has established a violation of his constitutional rights. In addition, the plaintiff argues that this right was clearly established at the time.

## VI.    Analysis

### A.    Plaintiff's Deliberate Indifference Claim

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. . . .  "[D]eliberate indifference entails something more than mere negligence," ***Farmer v. Brennan***, 511 U.S. 825, 835 (1994), but indifference can be manifested by prison doctors intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. ***Estelle v. Gamble***, 429 U.S. 97, 104 (1976).

The Fourth Circuit has held, albeit in an unpublished opinion, that where prison officials are aware of a serious medical need and delay treatment, the plaintiff's allegations are sufficient enough to satisfy the objective component of a deliberate indifference suit. *See **Clinkscales v. Pamlico Corr. Facility***, 238 F.3d 411 (4th Cir. 2000) (inmate sufficiently alleged deliberate indifference as a result of defendant's nine-month delay in providing a necessary surgery) (citing ***Monmouth County Corr. Inst. Inmates v. Lanzaro***, 834 F.2d 326, 346-47 (3d Cir. 1987) (prison officials may not interminably delay medical treatment or deny treatment based on arbitrary and burdensome procedures). Here, Webb presented evidence, when viewed in a light most favorable to him-as is required, sufficient to create a triable issue of material fact as to whether the delay constitutes deliberate indifference.

Further, to state a claim under the Eighth Amendment for ineffective medical

assistance, the plaintiff must show that the defendants acted with deliberate indifference to his serious medical needs. *Estelle*, 429 U.S. at 104-05. To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). These standards will be more fully described below.

### 1. Objective Deprivation of Basic Human Need that is "Sufficiently Serious"

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention. *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir.), *cert. denied*, 500 U.S. 956 (1991). It has been documented by defendant Dr. Ramirez that Mr. Webb's medical condition was clearly serious in nature. As discussed at length, Dr. Ramirez diagnosed Webb's hernia surgery as "medically necessary." This Court thus finds the objective component has been satisfied.

### 2. Subjective Component is Satisfied by Showing of Deliberate Indifference

The subjective component of a cruel and unusual punishment claim is satisfied by showing that the prison official acted with deliberate indifference. *Wilson*, 501 U.S. at 303. A finding of deliberate indifference requires more than a showing of negligence. *Farmer v. Brennan*, 511 U.S. at 835. A prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

A prison official is not liable if he "knew the underlying facts but believed (albeit

unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistent." *Id*. at 844. "To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). Additionally, mere disagreement between the inmate and the prison's medical staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual punishment unless exceptional circumstances exist. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Ironically, Webb actually agreed with the diagnosis recommending surgery.

A constitutional violation is established when "government officials show deliberate indifference to those medical needs which have been diagnosed as mandating treatment (such as the case here), conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." *See* *Morales Feliciano v. Calderon Serra*, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).

Here, a genuine issue of material fact exists pertaining to the officials' deliberate indifference. The Utilization Review Action Request, dated May 15, 2007, by its clear terms acknowledges that Dr. Ramirez was personally aware of facts indicating a substantial risk of serious harm; he approved the hernia surgery and deemed it "medically necessary." By its own definition provided on this form, that term includes "treatment that cannot be reasonably delayed without the risk of further complication, serious complication, significant pain . . .." The second part of the test requires the official must have actually recognized

the existence of such a risk. Again, as evidenced by the form, it is obvious that a jury could find the urgent nature of Dr. Ramirez' diagnosis; i.e. within 30 days, lends credence to a finding that he actually recognized such a risk existed. Likewise, this Court finds a jury could determine that any official who reviewed this form may also satisfy these two components of deliberate indifference.

In the defendants' Motion to Dismiss or for Summary Judgment, the Government attempts to bolster its argument that the medical staff at USP Hazelton was unsure about the plaintiff's willingness to pursue his hernia surgery due to plaintiff's refusal approximately five years prior at a different facility. The Government, however, fails to address that the Hazelton staff was keenly aware of the plaintiff's medical history up to, and including, Dr. Ramirez' May 15, 2007, determination that Mr. Webb's hernia surgery was "medically necessary" and was to be scheduled within 30 days. This Court finds this argument to be disingenuous.

### B.    The Supervisory Defendants

With respect to the plaintiff's claims against defendants Driver, Martinez, and Orsolits, the plaintiff asserts that these defendants are personally responsible for the alleged violation of his rights. To support this claim, the plaintiff asserts that he approached these defendants about his medical issues because of their "considerable authority" in their capacities as members of the Utilization Review Committee and because of their positions, they should have been aware of the plaintiff's medical complaints. Accordingly, the plaintiff asserts defendants Driver, Martinez, and Orsolits were involved in the alleged violation of the plaintiff's rights in their supervisory or official capacities.

In ***Miltier v. Beorn***, 896 F.2d at 854, the Fourth Circuit recognized, however, that

13

supervisory defendants may be liable in a ***Bivens*** action if the plaintiff shows that: "(1) the supervisory defendants failed to provide an inmate with needed medical care; (2) that the supervisory defendants deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendants tacitly authorized or were indifferent to the prison physicians' constitutional violations." In so finding, the Court recognized that "[s]upervisory liability based upon constitutional violations inflicted by subordinates is based, not upon notions of *respondeat superior*, but upon a recognition that supervisory indifference or tacit authorization of subordinate misconduct may be a direct cause of constitutional injury." ***Id***. However, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs. ***Id***. Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. ***Id***. In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed. ***Id***.

Typically, a suit against Government agents acting in their official capacities is considered a suit against the United States itself. *See **Kentucky v. Graham***, 473 U.S. 159, 165 (1985) ("Official-capacity suits . . . 'generally present only another way of pleading an action against an entity of which an officer is an agent.'"). Remedy under ***Bivens***, however, is against federal officials in their individual capacities, not the federal Government.

"Official capacity suits generally represent an action against an entity of which an officer is an agent . . .." ***Monell v. Dep't of Soc. Servs.***, 436 U.S. 658, 690 n. 55 (1978). Moreover, the Eleventh Amendment bars suits against the State unless the State has

14

waived its immunity.  ***Will v. Michigan Dept. of State Police***, 491 U.S. 58, 66 (1989).  In this case, claims against the defendants in their official capacities would be claims against the state and thus barred by the Eleventh Amendment immunity.

As for the defendants' defense of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).  The two-part test for qualified immunity is whether (1) the facts alleged "show [that] the . . . conduct violated a constitutional right" and (2) the constitutional right in question was clearly established such that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  ***Saucier v. Katz***, 533 U.S. 194, 201- 202 (2001).

### 1.      Defendant Orsolits

This Court finds that the plaintiff has provided evidence upon which, if proved, a reasonable jury could find that defendant Orsolits, as part of the Utilization Review Committee was aware of, tacitly authorized or was indifferent to an alleged violation of Webb's constitutional rights.  It is clear that the advice of medical staff was provided to the Utilization Review Committee for review.   Because Orsolits is not medical personnel, following such reliance would have been completely reasonable and appropriate. *See* ***Miltier v. Beorn***, 896 F.2d at 854.  This case is significantly different from the typical case, however, in that the physicians found that the plaintiff's hernia surgery *was* "medically necessary;" however, the defendants failed to schedule the surgery within the recommended thirty-day period as indicated by the "Level 2" priority designation.  See Pl.'s

Ex. (B)(41).  To that end, members of the Utilization Review Committee actually failed to rely on the medical personnel's recommendation.  Liability in such cases can typically be avoided by simply deferring to the doctors' medical judgment.  *Miltier*, 896 F.2d at 854. Here, the URC arguably took the opposite approach by *failing* to defer to the clearly stated medical professional's recommendation.  Accordingly, sufficient evidence exists from which a jury could find defendant Orsolits liable in this action.

### 2.  Defendants Driver and Martinez

On the other hand, this Court finds insufficient evidence in the record to implicate defendants Driver and Martinez.  As required in a *Bivens* action, the plaintiff cannot establish supervisory liability merely by showing that a subordinate was deliberately indifferent to his needs.  Rather, the plaintiff must show that a supervisor's corrective inaction amounts to deliberate indifference or tacit authorization of the offensive practice. While it is axiomatic that prison officials are subordinate to the prison warden, insufficient evidence exists tending to show Driver or Martinez were ever aware of Webb's condition. Through the course of discovery, it has become apparent to this Court that the plaintiff has failed to provide a sufficient showing that Warden Driver or Mr. Martinez actually served on the Utilization Review Committee.  Neither has plaintiff set forth sufficient evidence showing any alleged corrective inaction amounted to deliberate indifference or tacit authorization of the offensive practice alleged.  *Id*.  Accordingly, defendants Driver and Martinez are hereby **DISMISSED** from this action.

### C.  The Government's Position is Completely at Odds with the Fourth Circuit's Opinions

The Government attacks the plaintiff's failure to respond to why this case should be

resolved differently from ***Webb v. Hamidullah***, 2008 WL 2337608 (4th Cir. 2008). Insofar as the Fourth Circuit, as well as this Court, have expressly and quite clearly recognized the major distinction between the two cases, the plaintiff's choice not to address the same comes as no surprise. Rather, it appears it is the Government, not the plaintiff, that completely misses the mark in its reading of the Fourth Circuit's two ***Webb*** opinions.

The Fourth Circuit's Opinion reversing the issue of medical indifference regarding Webb's hernia in this case is quite telling. The Court, in distinguishing this case from Webb's previous action against officials at FCI-Estill, states two material differences which require a different result. In ***Webb v. Hamidullah***, No. 06-7381 (4th Cir. June 6, 2008), the Fourth Circuit affirmed the district court's grant of summary judgment to defendants on Webb's claims against officials at FCI-Estill. The Court opined in that case "that Webb failed to support his claim of surgical delay with evidence of resultant harm or a worsened condition." ***Id***. In the present case, however, the Fourth Circuit found that "Webb has alleged that his pain is severe and that his hernia has grown larger[2] due to the delay in surgery." ***Id***. Second, the Court in ***Hamidullah*** found that after seeking and obtaining medical opinions, the physician at FCI-Estill determined that a hernia operation was to be performed on an "elective" basis – "a decision [the Court] found did not implicate Webb's Eighth Amendment rights." ***Id***. In this case, however, Webb alleges, and the record supports, that while he was housed in Hazelton, his hernia surgery was deemed "medically

---

[2] This Court notes that while the Fourth Circuit noted Webb's allegation as set forth in his original Complaint as true, factual disputes exist regarding whether the hernia actually increased in size. Nevertheless, the Fourth Circuit recognized a second distinction from ***Hamidullah*** insofar as that surgery was determined to be performed on an "elective bases," which did not implicate Webb's Eighth Amendment rights.

necessary." *Id*. This clear distinction was recognized by the Fourth Circuit, and clearly necessitates a different result.

### D.    Dr. Ramirez' URC Form Speaks for Itself

In an effort to combat this critical piece of evidence, defendant's latest theory suggests that Dr. Ramirez' diagnosis as "medically necessary," to be performed within 30 days, as documented, did not actually mean that which the form expressly indicates. Rather, Dr. Ramirez' deposition testimony asserts an altruistic alternative meaning; i.e., that the decision to diagnose in such a manner was really an effort to help the plaintiff by making sure his surgery would not fall through the cracks. Without raising the litany of questions which come to mind, this Court will simply leave that question of material fact to the jury. Indeed, this Court is confident that, when read in conjunction with the definitions provided on this simplistic, one-page form, a competent jury will be adequately prepared to fulfill its truth-seeking role in making its determination as to the form's true meaning.

### VII.    Conclusion

Upon careful review of the above, this Court is of the opinion that the Motion to Dismiss and Motion for Summary Judgment **[Doc. 115]** should be, and the same hereby is **DENIED IN PART** and **GRANTED IN PART** consistent with this Opinion. Accordingly, this Court **ORDERS** the Federal Tort Claims Act Claims be **WITHDRAWN** as the plaintiff has voluntarily withdrawn the same. Further, any claims related to the plaintiff's GERD claims are hereby **DISMISSED** as procedurally barred. Additionally, defendants Joe Driver, Warden, and Mr. Martinez, acting Warden, are **DISMISSED**. Associate Warden Orsolits, Dr. Ramirez, Dr. Vazquez, and Dr. Branson shall remain as parties to this action. In light

of the above, the plaintiff's two *pro se* motions **[Docs. 111 & 112]** are **DENIED AS MOOT**.

As a final matter, for reasons appearing to this Court, the **trial** in this matter is hereby

**CONTINUED** until **August 16, 2011**.  Further, the **pretrial conference** is hereby

**CONTINUED** to **August 8, 2011, at 10:00 a.m.  All other deadlines shall remain in**

**effect**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record herein.

**DATED:** July 8, 2011.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE